DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RYO MACHINE RENTAL, LLC, *et al.*, | ) | |
| | ) | CASE NO.  4:10-CV-2462 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| U.S. DEPARTMENT OF THE | ) | **AND ORDER GRANTING** |
| TREASURY, ALCOHOL AND TOBACCO | ) | **PRELIMINARY INJUNCTION** |
| TAX AND TRADE BUREAU, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

        Plaintiffs RYO Machine Rental, LLC, Tobacco Outlet Express, LLC, and Tightwad

Tobacco, LLC ("Plaintiffs") filed a complaint and motion for temporary restraining order and

preliminary injunction, concomitantly, against the U.S. Department of the Treasury, Alcohol and

Tobacco Tax and Trade Bureau and John J. Manfreda, Administrator, Alcohol and Tobacco Tax

and Trade Bureau ("Defendants") on October 28, 2010, to enjoin Defendants from enforcing

Ruling No. 2010-4 issued on September 30, 2010.[1]  On October 29, 2010, the Court conducted

an informal conference in Chambers, not on the record, with counsel for Plaintiffs and

Defendants present.[2]  On the same day, the Court denied Plaintiffs' motion for a temporary

restraining order and scheduled a hearing on the motion for a preliminary injunction for

---

        [1] ECF Nos. 1 & 2.

        [2] AUSA Kathleen Midian was present in Chambers while DOJ attorney Lisa Bellamy
attended by telephone from Washington, D.C.

(4:10-CV-2462)

November 12, 2010.[3]  On November 10, 2010, Defendants filed a motion to dismiss Plaintiffs'

Complaint arguing that the Court lacks subject matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1) and an opposition to Plaintiffs' motion for a preliminary injunction.[4]

　　　　After hearing the parties' arguments during the November 12, 2010 preliminary

injunction hearing and having reviewed all of the briefs and evidence presented, the Court

reconsidered its denial of Plaintiffs' motion for a temporary restraining order and granted the

motion on November 15, 2010.[5]  The Court also ordered the parties to file post-hearing briefs to

which the parties complied on November 29, 2010.[6]

　　　　Having had the benefit of oral argument and thorough briefing, pre- and post-hearing, of

the issues by the parties, the Court GRANTS Plaintiffs' motion for preliminary injunction and

DENIES in part and GRANTS in part Defendants' motion to dismiss for the reasons that follow.

---

[3]  ECF No. 9.

[4]  ECF Nos. 16 & 18.

[5]  The Court ordered in part as follows: "[T]he U.S. Treasury Department, Alcohol and Tobacco Tax and Trade Bureau ("TTB") and their agents, servants, employees, successors, representatives and assigns, and all others in active concert and privity with them who receive actual notice of this Temporary Restraining Order by personal service or otherwise, are immediately restrained from enforcing the TTB's September 30, 2010 Ruling No. 2010-4 and all requirements set forth therein. . . ."  ECF No. 20.

[6]  *See* ECF Nos. 25 & 26.

-2-

(4:10-CV-2462)

## I. **Factual Background**

Defendant United States Department of the Treasury, Alcohol and Tobacco Tax and

Trade Bureau ("TTB")[7] issued Ruling No. 2010-4 (the "Ruling") on September 30, 2010.  The

Ruling held:

> The proprietor of a retail establishment who is in the business of making cigarettes
> for others, or who facilitates the making of cigarettes by or for others by providing
> the use of a commercial cigarette-making machine at its premises is engaged in the
> business of a tobacco products manufacturer and must qualify for and obtain a permit
> from TTB to engage in such business. The proprietor must also obtain a bond and
> comply with the applicable regulatory recordkeeping, reporting, and inventory
> requirements. As a manufacturer of tobacco products, the proprietor is liable for the
> payment of tax on the cigarettes produced. Once qualified as a manufacturer of
> tobacco products, a proprietor may, under the IRC, obtain roll-your-own tobacco and
> cigarette papers or tubes without payment of tax for use in the manufacture of
> cigarettes.[8]

Non-compliance with the regulatory requirements subjects a violator to forfeiture and civil and

criminal penalties.  Defendants assert that "TTB issued the Ruling because it determined that the

---

[7]  "The Homeland Security Act renders functions of the Bureau of Alcohol, Tobacco and
Firearms (ATF) into two new organizations. This Act creates with the Department of the
Treasury a new Alcohol and Tobacco Tax and Trade Bureau (TTB) and moves certain law
enforcement functions of ATF to the Department of Justice.

 Under the Act, the Alcohol and Tobacco Tax and Trade Bureau is responsible for
administration and enforcement of:

 Internal Revenue Code of 1986, 26 USC (IRC):
  Chapter 51 (Distilled Spirits, Wine and Beer),
  Chapter 52 (Tobacco Products and Cigarette Papers and Tubes), and
  Sections 4181-4182 (Firearms and Ammunition Excise Taxes); . . . ."  TTB.GOV,
http://www.ttb.gov/about/stat_auth.shtml (last visited Nov. 16, 2010).

[8]  ECF No. 2-1 at 5.

(4:10-CV-2462)

use of commercial cigarette-making machines in retail establishments jeopardized the assessment and collection of taxes on cigarettes."[9]

Plaintiff RYO Machine Rental, LLC ("RYO Machine"), an Ohio limited liability company with its principal place of business in Girard, Ohio, began its operation in 2008. RYO Machine manufactures and sells cigarette-rolling machines known as "RYO Filling Stations" to distributors and retailers in the United States. Plaintiff Tobacco Outlet, an Ohio limited liability company with its principal place of business in New Castle, Pennsylvania, began its operation in 2009. Tobacco Outlet distributes to retail stores RYO Filling Stations as well as tobacco and tubes for use in the RYO Filling Stations. Additionally, Tobacco Outlet provides these retail stores with consulting services and technical support and repairs for the RYO Filling Stations. Plaintiff Tightwad Tobacco, an Ohio limited liability company with its principal place of business in New Castle, Pennsylvania, began its operation in 2008. Tightwad Tobacco operates five retail stores located in western Pennsylvania. In addition to offering tobacco products and accessories to consumers, Tightwad Tobacco also operates RYO Filling Stations at its retail locations.

The machine at issue, the RYO Filling Station, measures about 55 inches high by 40 inches wide by 30 inches deep.[10] The RYO Filling Stations are predominantly placed in tobacco

---

[9] ECF No. 18 at 12.

[10] ECF No. 1 at 8.

-4-

(4:10-CV-2462)

retail stores.  After loading the machine with loose tobacco and pre-fabricated cigarette tubes,[11] both of which are typically purchased from the retailer, a consumer pays a fee to the retailer for the use of the machine to roll his or her own cigarettes.  The RYO Filling Station includes a computer interface similar to an automatic teller machine that enables the consumer's operation of the machine.  The RYO Filling Station produces approximately 200 cigarettes every ten (10) minutes (an amount equal to a carton of cigarettes).

The TTB's Ruling obligates retailers that utilize cigarette-making machines, such as Tightwad Tobacco, to comply not only with the Ruling itself, but a host of other requirements set forth in the Internal Revenue Code ("IRC") and the Code of Federal Regulations ("CFR").  *See, e.g.*, 26 U.S.C. §§ 5701, 5711, 5713, 5721, 5722, 5723, 5741.  These other requirements include the packaging and labeling requirements set forth in the CFR and statutory and regulatory provisions administered by the U.S. Food and Drug Administration.[12]  TTB has indicated that a retailer must "immediately discontinue the use of . . . cigarette-making machine[s] until" the retailer receives a permit to manufacture tobacco products.[13]

Plaintiffs seek a preliminary injunction to prevent the TTB's enforcement of the Ruling because Plaintiffs believe the Ruling issued by the TTB violates the Administrative Procedure Act, is *ultra vires* and otherwise unlawful.  Defendants seek to dismiss the Complaint on the

---

[11]  A cigarette tube is simply what a typical cigarette looks like without the tobacco, *i.e.*, an empty paper tube connected to a filter.  *See* Plaintiffs' Exhibit 4 submitted during the preliminary injunction hearing.

[12]  ECF No. 2-2 at 3.

[13]  ECF No. 2-2 at 2.

-5-

(4:10-CV-2462)

grounds that the Court lacks subject matter jurisdiction and that the Court should deny the

motion for preliminary injunction because Plaintiffs fail to meet the burdens warranting such

relief.

## II.  **Rule 12(b)(1) Standard of Law**

Because Defendants challenge the Court's subject matter jurisdiction to hear the case, this

threshold issue must be resolved prior to any discussion on the merits of Plaintiffs' motion for a

preliminary injunction.

A Rule 12(b)(1) motion to dismiss an action for lack of subject matter jurisdiction may be

premised on a facial attack or a factual attack.  *See Abdelkhaleq v. Precision Door of Akron*, No.

5:07cv3585, 2008 WL 3980339, at *2 (N.D.Ohio Aug.21, 2008) (O'Malley, J.).  A facial attack

tests the adequacy of the complaint, *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974), overruled

on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984), while a factual attack evaluates the

actual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739

(N.D. Ohio 1997).  The importance of this distinction is related to the nature of the Court's

consideration of the facts and allegations presented in connection with the Rule 12(b)(1) motion.

If the motion presents a facial attack,  the Court must take all of the material allegations

in the complaint as true and construe them in the light most favorable to the non-moving party.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994) cert. denied. 513 U.S. 868, 115 S.Ct.

188, 130 L.Ed.2d 121 (1994) (*citing Scheuer*, 416 U.S. at 235-37).  In contrast, if the motion

presents a factual attack, then the Court is free to consider extrinsic evidence and may weigh the

evidence of its own jurisdiction without affording the plaintiff the presumption of truthfulness.

-6-

(4:10-CV-2462)

*Abdelkhaleq*, 2008 WL 3980339 at *2 (*citing Ritchie*, 15 F.3d at 598); *Rogers v. Stratton Indus.,*
*Inc.*, 798 F.2d 913, 915 (6th Cir.1986); *see also Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir.
2005).

Since Defendants challenge the Court's "very power to hear the case," the attack is
factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citation omitted);
*see also Ritchie*, 15 F.3d at 598. Therefore, the Court is free to consider extrinsic evidence and
may weigh the evidence of its own jurisdiction without affording the plaintiff the presumption of
truthfulness. *Abdelkhaleq*, 2008 WL 3980339 at *2 (*citing Ritchie*, 15 F.3d at 598). "[W]here
subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of
proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d at
915.

### III. Analysis

#### A. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiciton

Pursuant to Rule 12(b)(1), Defendants assert the Court lacks subject matter jurisdiction to
hear the case based on the Anti-Injunction Act ("AIA"), 28 U.S.C. § 7421, and the Declaratory
Judgment Act ("DJA"), 28 U.S.C. § 2201(a). The Sixth Circuit follows the holdings of other
Circuit Courts in that the AIA and DJA operate coterminously. *In re Leckie Smokeless Coal Co.*,
99 F.3d 573, 583 (4th Cir. 1996) (teaching, "Though the Anti-Injunction Act concerns federal
courts' subject matter jurisdiction and the tax-exclusion provision of the Declaratory Judgment
Act concerns the issuance of a particular remedy, the two statutory texts are, in underlying intent
and practical effect, coextensive."); *Ecclesiastical Order of the ISM of AM, Inc. v. I.R.S.*, 725

(4:10-CV-2462)

F.2d 398, 402 (6th Cir. 1984) (*citing Bob Jones University v. Simon*, 416 U.S. 725, 732 n.7 (1984) (teaching, "[T]he federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act."); *see also Lugo v. Simon*, 453 F.Supp. 677, 690 (N.D. Ohio 1978). Therefore, the following analysis focuses on the applicability of the AIA to Plaintiffs' claims because the Court's determination applies equally to the DJA.

The Anti-Injunction Act provides in pertinent part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Having no apparent legislative history, the Supreme Court surmised "the circumstances of its enactment strongly suggest that Congress intended the [AIA] to bar a suit only in situations in which Congress had provided the aggrieved party with an alternative legal avenue by which to contest the legality of a particular tax." *South Carolina v. Regan*, 465 U.S. 367, 373 (1984). In other words and in most cases, an aggrieved party must first pay the tax due and then sue for a refund—the alternative legal remedy in which to challenge the legality of the tax—otherwise, the AIA prohibits suit.

The AIA provides several statutory exceptions, none of which Plaintiffs have invoked. The Supreme Court, however, recognizes two judicially created exceptions. The first exception is set forth in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962). The Supreme Court found that the AIA does not apply if (1) it is clear that the government cannot ultimately prevail under any circumstances, and (2) equity jurisdiction exists. *Williams Packing*, 370 U.S. at 6-7. The second exception is found in *South Carolina v. Regan*, 465 U.S. 367 (1984). The

-8-

(4:10-CV-2462)

Supreme Court recognized another equitable exception to the AIA for situations in which the plaintiff has no recourse to alternative legal remedies. *South Carolina v. Regan*, 465 U.S. at 378.

Plaintiffs rely primarily on the exception found in *South Carolina v. Regan*. Plaintiffs briefly argue that the exception found in *Williams Packing* also applies, but with much less enthusiasm. Because, as discussed below, the Court finds that the exception found in *South Carolina v. Regan* applies in this case, albeit only to Plaintiffs RYO Machine and Tobacco Outlet, the analysis is accordingly limited to the *South Carolina v. Regan* exception.[14]

In *South Carolina v. Regan*, the State of South Carolina sought leave to file a complaint against Donald T. Regan, the Secretary of the Treasury at that time. The State of South Carolina sought an injunction and other relief on the ground that a particular tax law was unconstitutional. The State of South Carolina argued that the practical effect of the tax law in question required it to issue bonds in a specific way so "that the [tax law] destroy[ed] its freedom to issue obligations in the form that it chooses." *South Carolina v. Regan*, 465 U.S. at 372. Additionally, the tax law would cause its bondholders to be liable for the tax on the interest earned on the bonds. The Secretary of the Treasury objected on the ground that the Anti-Injunction Act barred the claim. The Court found that "South Carolina will incur no tax liability. Under these circumstances, the State will be unable to utilize any statutory procedure to contest the constitutionality of [the tax law]. Accordingly, the [AIA] cannot bar this action." *South Carolina v. Regan*, 465 U.S. at

---

[14] The Court declines to determine the merits of Plaintiffs' substantive claims at this juncture of the case. Accordingly, the Court reserves its judgement as to whether, under the *Williams Packing* exception, "it is clear that the government cannot ultimately prevail under any circumstances."

(4:10-CV-2462)

378-79.  Thus, under *South Carolina v. Regan* the AIA does not bar suit for situations in which the plaintiff has no recourse to alternative legal remedies.

Various courts have interpreted the *South Carolina v. Regan* exception as extremely narrow.  *See  Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 408 n.3 (4th Cir. 2003) ("courts have construed the *Regan* exception very narrowly . . . ."); *Spencer v. Brady*, 700 F.Supp. 601, 604 (D.D.C. 1988) (recognizing the exception is "an extremely narrow [exception ] to the Anti-Injunction Act for situations in which the taxpayer has no means of challenging a tax statute other than through an injunctive action").  The *South Carolina v. Regan* exception may be applied only when a party has no legal avenue to explore, other than through an injunctive action, in order to contest the constitutionality of a federal tax statute.  *See Dominion Nat'l Bank v. Olsen*, 771 F.2d 108, 116 (6th Cir. 1985) (*citing South Carolina v. Regan*,  465 U.S. 367) ("[A] suit for declaratory and injunctive relief may proceed where Congress has provided no alternative method of challenging the constitutionality of a federal tax.").  The "Court takes note of the Supreme Court's assessment in *Bob Jones* that an alternate avenue of review need not be 'the best that can be devised' and may include various inconveniences (such as delay) to the party petitioning for relief."  *Debt Buyers' Assoc. v. Snow*, 481 F.Supp.2d 1, 10-11 (D.D.C. 2006) (*citing Bob Jones*, 416 U.S. at 747).

### 1.  The *South Carolina v. Regan* exception applies to RYO Machine's claims

RYO Machine manufactures the cigarette-rolling machines at issue.  It is not a retailer that makes the machines available for consumer use at its place of business.  It is undisputed that RYO Machine is not required under the TTB's Ruling to apply for and obtain a permit, meet the

(4:10-CV-2462)

host of other regulatory requirements and pay the applicable taxes.  RYO's customers, however,
are affected by the TTB's Ruling and are subjected to the permit, regulatory and tax requirements
of the Ruling.  Thus, RYO Machine cannot pay the tax and file suit for a refund.  RYO Machine
has no remedy available to challenge the constitutionality of the TTB's Ruling.

　　　　　The reasoning set forth in *South Carolina v. Regan* applies with equal force to the facts of
this case and the Court finds the exception applicable to RYO Machine.  Just like the State of
South Carolina in *South Carolina v. Regan*, RYO Machine is not obligated to pay the tax
indicated by the TTB's Ruling.  Just like the State of South Carolina in *South Carolina v. Regan*,
RYO Machine's customers are obligated to pay the tax indicated by the TTB's Ruling.  It follows
that RYO Machine would need to sit back and wait for a retailer to decide to pursue litigation
against the TTB and then rely on that retailer to present the relevant arguments on its behalf.
*South Carolina v. Regan*, 465 U.S. at 380.  This proposition is untenable for several reasons.
First, a retailer needs to apply for and obtain a permit as a manufacturer of tobacco before it even
has the ability to pay the tax.  Counsel for TTB informed the Court during the November 12,
2010 hearing that obtaining a permit takes at least 60 days.  It is entirely plausible that during this
time, a retailer would not purchase RYO Machine's Filling Station until it obtains the permit
thereby subjecting RYO Machine to lost or delayed sales.  Meanwhile, Plaintiff Tightwad
Tobacco (a retailer) has indicated, justifiably or not, that due to the rigorous requirements of the
permit process it has not even attempted to apply for a permit.  RYO Machine cannot compel a
retailer to commence the permit application process which leaves it hard-pressed to find a party
to argue the case on its behalf.

(4:10-CV-2462)

Second, given the above scenario, the AIA "would entirely deprive [RYO Machine] of any opportunity to obtain review of its claims." *South Carolina v. Regan*, 465 U.S. at 381. RYO Machine is not required to obtain a permit under the Ruling as the manufacturer of the cigarette-rolling machine. It is not in the position to pay the tobacco tax and sue for a refund.

The only argument Defendants provide to take RYO Machine outside of the *South Carolina v. Regan* exception is the accusation that "Plaintiffs are linked contractually and are part of one entity working together, and indeed suing together."[15] Defendants speculate in an attempt to analogize this case to a scenario described in *South Carolina v. Regan* where tax payers form an organization to litigate their own individual tax claims in order to avoid the AIA's applicability to their individual suit. *South Carolina v. Regan*, 465 U.S. at 381 n.19. The Court found that such a strategy "would elevate form over substance to treat such organizations as if they did not possess alternative remedies." *South Carolina v. Regan*, 465 U.S. at 381 n.19. This argument holds no water in the instant case. Each plaintiff in the instant action is a separate entity arguing on its own behalf. At present, there is no evidence before the Court establishing otherwise. Given that, RYO Machine has no alternative remedy available to challenge the constitutionality of the TTB's Ruling.

Accordingly, the Anti-Injunction Act does not bar RYO Machine's claims and the Court has subject matter jurisdiction to rule on the motion for preliminary injunction filed by RYO Machine.

---

[15] ECF No. 26 at 14.

-12-

(4:10-CV-2462)

### 2. The *South Carolina v. Regan* exception applies to Tobacco Outlet's claims

Tobacco Outlet distributes to retail stores RYO Filling Stations.  Just like RYO Machine, Tobacco Outlet is not a retailer that makes the machines available for consumer use at its place of business.  It is undisputed that Tobacco Outlet is not required under the TTB's Ruling to apply for and obtain a permit, meet the host of other regulatory requirements and pay the applicable taxes.  Thus, Tobacco Outlet cannot pay the tax and file suit for a refund.  Tobacco Outlet has no alternative remedy available to challenge the constitutionality of the TTB's Ruling.

The analysis supporting the applicability of the *South Carolina v. Regan* exception to RYO Machine's claims is equally applicable to Tobacco Outlet.  In fact, it is identical. Accordingly, the Anti-Injunction Act does not bar Tobacco Outlet's claims and the Court has subject matter jurisdiction to rule on the motion for preliminary injunction filed by Tobacco Outlet.

### 3. The *South Carolina v. Regan* exception does not apply to Tightwad Tobacco's claims

Tightwad Tobacco operates five retail stores and all five stores make the RYO Filling Station available for consumer use to roll their own cigarettes.  It is undisputed that Tightwad Tobacco is required under the TTB's Ruling to apply for and obtain a permit, meet the host of other regulatory requirements and pay the applicable taxes.  Thus, Tightwad Tobacco can pay the tax and file suit for a refund.  Tightwad Tobacco therefore has an alternative remedy available to challenge the constitutionality of the TTB's Ruling.

Tightwad Tobacco claims that it is impossible for it and other similarly situated retailers to ever obtain the permit required by the TTB Ruling.  Tightwad Tobacco argues that the

-13-

(4:10-CV-2462)

regulatory requirements associated with the Ruling, in effect, foreclose a retailers' ability to qualify as a manufacturer of tobacco and this leaves them without an alternative remedy to challenge the constitutionality of the TTB's Ruling.  This assessment is too speculative given that Tightwad Tobacco has not attempted to obtain the necessary permit nor has Tightwad Tobacco offered evidence of another retailer's failed attempt to obtain the permit required by the TTB's Ruling.

If a retailer is denied a permit, it has the opportunity to request a hearing with an administrative law judge to appeal that decision.[16]  If a retailer obtains the permit, it then must pay the applicable taxes associated with operating the RYO Filling Station and could then file suit for a refund contesting the constitutionality of the TTB's Ruling.  It matters not under the *South Carolina v. Regan* exception how burdensome the alternative remedy may be to the aggrieved party.  *Debt Buyers' Assoc. v. Snow*, 481 F.Supp.2d 1, 10-11 (D.D.C. 2006) (*citing Bob Jones*, 416 U.S. at 747) (noting "the Supreme Court's assessment in *Bob Jones* that an alternate avenue of review need not be 'the best that can be devised' and may include various inconveniences (such as delay) to the party petitioning for relief").  The *South Carolina v. Regan* exception applies only when an aggrieved party is "unable to utilize *any* statutory procedure to contest the constitutionality of [the tax law]."  *South Carolina v. Regan*,  465 U.S. at 378-79 (emphasis added).  Tightwad Tobacco has statutory procedures available to it to contest the constitutionality of the TTB's Ruling.

---

[16]  *See* ECF No. 18-1 at 2-3 detailing the permit application process with the TTB.

-14-

(4:10-CV-2462)

Regardless of the level of inconvenience that the statutory procedures available to Tightwad Tobacco may appear, given that they are nonetheless "available," takes Tightwad Tobacco's claims outside the framework of the *South Carolina v. Regan* exception.  Therefore, the Court finds the Anti-Injunction Act bars Tightwad Tobacco's claims and the Court does not have subject matter jurisdiction to rule on Tightwad Tobacco's claims.

In summary, Tightwad Tobacco is dismissed from the case.  The case shall proceed with RYO Machine and Tobacco Outlet as plaintiffs and the Anti-Injunction Act and Declaratory Judgment Act do not deprive the Court of subject matter jurisdiction to consider Plaintiffs' motion for preliminary injunction.

### B.  Standing

Defendants argue for the first time in their Court ordered post-hearing brief that Plaintiffs RYO Machine and Tobacco Outlet lack standing to challenge the TTB's Ruling—which is a facial attack for purposes of applying the proper Rule 12(b)(1) standard.[17]  Plaintiffs have not had an opportunity to respond to this argument for the obvious reason that Defendants never asserted it prior to the filing of the post-hearing brief.  Notwithstanding, the Court finds that Plaintiffs RYO Machine and Tobacco Outlet do have standing to pursue their claims.

Constitutional standing under Article III has three elements.  *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008).  "'First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  *Id.* (*quoting Lujan v. Defenders of Wildlife*, 504

---

[17]  ECF No. 26 at 9-12.

-15-

(4:10-CV-2462)

U.S. 555, 560 (1992)).  Second, the injury must be "'fairly traceable to the challenged action of the defendant.'"  *Id.* (*quoting Lujan*, 504 U.S. at 560).  Third, it must be likely that the injury will be "'redressed by a favorable decision.'"  *Id.* (*quoting Lujan*, 504 U.S. at 561).

Each of these elements "'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive states of the litigation.'"  *Id.* (*quoting Lujan*, 504 U.S. at 561).  At this stage of the litigation, the pleading stage, the Court "'must accept as true all material [factual] allegations of the complaint.'"  *Id.* (*quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  The Court must also construe the complaint liberally in favor of the complaining party.  *See United States v. Salti*, 579 F.3d 656, 667 n.11 (6th Cir. 2009) (*citing Warth*, 422 U.S. at 501).  General factual allegations of injury may suffice to demonstrate standing, "for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).  However, "standing cannot be inferred . . . from averments in the pleadings, but rather must affirmatively appear in the record," *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998), nor will "naked assertion[s] devoid of further factual enhancement" suffice.  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  Rather, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).

-16-

(4:10-CV-2462)

Furthermore, RYO Machine and Tobacco Outlet assert injuries that allegedly arise from the TTB's Ruling regulating the behavior of others—namely retailers like Tightwad Tobacco. The Supreme Court in *Lujan* teaches the proper standard governing such a situation.

> When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction-and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989) (opinion of KENNEDY, J.); *see also Simon, supra*, 426 U.S., at 41-42, 96 S.Ct., at 1925, 1926; and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. *E.g., Warth*, supra, 422 U.S., at 505, 95 S.Ct., at 2208. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. *Allen, supra*, 468 U.S., at 758, 104 S.Ct., at 3328; *Simon, supra*, 426 U.S., at 44-45, 96 S.Ct., at 1927; *Warth, supra*, 422 U.S., at 505, 95 S.Ct., at 2208.

*Lujan*, 504 U.S. at 562.

"[E]conomic injuries may constitute an injury-in-fact for the purposes of Article III standing." *White v. U.S.*, 601 F.3d 545, 552 (6th Cir. 2010) (*citing Lujan*, 504 U.S. at 559-61). The TTB Ruling applies to all fifty states. RYO Machine and Tobacco Outlet claim that the ultimate effect of the Ruling will put them out of business because retailers such as Tightwad Tobacco will not apply for or be able to obtain the required permit and will therefore not utilize the RYO Filling Station. Whether or not a retailer will be able to obtain the required permit is too speculative a reason to confer standing on RYO Machine and Tobacco Outlet. Not applying for the permit, however, is not speculative and factually shown given that Tightwad Tobacco has

-17-

(4:10-CV-2462)

not made an attempt to apply for the permit.  Additionally, RYO Machine indicated in the

Complaint that production of the RYO Filling Station "has already been suspended by virtue of

the TTB Ruling, resulting in the furlough of 30 employees."[18]

RYO Machine and Tobacco Outlet manufacture and distribute cigarette-rolling machines

to retail tobacco stores.  The Ruling prohibits retailers to use the cigarette-rolling machines

without a permit.  Since the TTB issued the Ruling, Tightwad Tobacco, a retailer, has not

attempted to obtain a permit due to the rigorous standards and time involved obtaining the

permit.  Since the TTB issued the Ruling, at a minimum, RYO Machine has suspended

production of the cigarette-rolling machine and furloughed employees.  RYO Machine and

Tobacco Outlet's claim in the Complaint that they will likely cease operations as a result of the

Ruling is "entirely plausible on its face."  *Iqbal*, - - - U.S. - - - -, 129 S.Ct. at 1949.  It follows

that it is likely that this "injury will be 'redressed by a favorable decision'" enjoining

enforcement of the Ruling.  *See Fednav*, 547 F.3d at 614 (*quoting Lujan*, 504 U.S. at 561).  The

Court finds that RYO Machine and Tobacco Outlet have satisfied all three elements to confer

constitutional standing under Article III.

### C.  Preliminary Injunction Standard of Law

The Supreme Court teaches that

[t]he purpose of a preliminary injunction is merely to preserve the relative positions
of the parties until a trial on the merits can be held.  Given this limited purpose, and
given the haste that is often necessary if those positions are to be preserved, a
preliminary injunction is customarily granted on the basis of procedures that are less
formal and evidence that is less complete than in a trial on the merits.  A party thus

---

[18]  ECF No. 1 at 16.

-18-

(4:10-CV-2462)

> is not required to prove his case in full at a preliminary-injunction hearing[,] *Progress Development Corp. v. Mitchell*, 286 F.2d 222 (C.A.7 1961), and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits, *Industrial Bank of Washington v. Tobriner*, 132 U.S.App.D.C. 51, 54, 405 F.2d 1321, 1324 (1968); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (C.A.2 1953). In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits. *E. g., Brown v. Chote, supra*; *Gellman v. Maryland*, 538 F.2d 603 (C.A.4 1976); *Santiago v. Corporacion de Renovacion Urbana y Vivienda de Puerto Rico*, 453 F.2d 794 (C.A.1 1972).

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

"When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The test is flexible and the factors are not prerequisites that must be met, but each factor must be balanced. *Id.*

## 1. Likelihood of success on the merits

The heart of this case is whether the TTB's Ruling is considered interpretive or legislative. If the Court finds the Ruling to be interpretive, then the Ruling does not violate the Administrative Procedures Act. If the Ruling is legislative, then Defendants have violated the APA upon issuing the Ruling. Plaintiffs RYO Machine and Tobacco Outlet assert that the Ruling issued by the TTB violates the Administrative Procedure Act, is *ultra vires* and otherwise

(4:10-CV-2462)

unlawful.  Defendants contend that the Ruling at issue is interpretive rather than legislative in nature and thus does not violate the Administrative Procedure Act and is otherwise lawful.

The Sixth Circuit has emphasized the "the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  Moreover, "where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued," a preliminary injunction is appropriate.  *Id.*

Plaintiffs advanced evidence during the hearing, which if believed, would support a finding in favor of Plaintiffs' argument on the merits.  At this time and with the record before it, the Court finds that Plaintiffs RYO Machine and Tobacco Outlet have a colorable claim against the TTB.  Furthermore, given that it appears the TTB's impetus to issue Ruling No. 2010-4 was based on the sheer volume of cigarettes that the RYO Filling Station produces in a relatively short period of time as opposed to other machines that have existed for years and produce significantly fewer cigarettes, Plaintiffs have presented a basis demonstrating serious questions concerning the alleged violation of the Administrative Procedure Act claim on which they could prevail.  Additionally and as discussed below, the harm to which Plaintiffs are subject, *i.e.*, going out of business, outweighs the potential harm to Defendants.

(4:10-CV-2462)

### 2. Irreparable Harm to the Movant

RYO Machine and Tobacco Outlet's primary source of income and sole business focus in the RYO Filling Station.  Given the record before the Court, it is highly plausible that if a preliminary injunction is not granted, Plaintiffs' business will cease as prospective users of the cigarette-rolling machine will become non-existent or decrease significantly.  This constitutes a harm that Plaintiffs likely cannot recoup.

### 3. Harm to Others as a Result of Issuance

The temporary loss of potential tax revenue collected by Defendants is minor in comparison to Plaintiffs' potential loss.  Defendants claim that hundreds of millions of dollars of tax revenue is lost by the use of the RYO Filling Station and similar machines.  Defendants, however, have not shown that even one retailer has applied for a permit in order to then pay the resulting tax as a manufacturer of tobacco.  Nor have Defendants shown that consumers have, in response to the Ruling, changed their cigarette purchasing habits from roll-your-own cigarettes to pre-packaged cigarettes thereby increasing tax revenue for the government.  Defendants harm, while not inconsequential, is less quantifiable at this stage of the litigation than the palpable and imminent nature of Plaintiffs' harm if the Court does grant a preliminary injunction.

### 4. Public Interest

It is always in the public interest to ensure that the laws enacted by Congress and enforced by the Executive Branch are constitutional.  Judging the constitutionality of an Act of Congress is "the gravest and most delicate duty that this Court is called on to perform." *Blodgett*

(4:10-CV-2462)

*v. Holden*, 275 U.S. 142, 147-148 206 (1927) (Holmes, J., concurring).  Preserving the *status quo* in order to determine the constitutionality of Ruling 2010-4 will serve the public's best interest.

Considering Plaintiffs have demonstrated serious questions going to the merits of their claims, the substantial harm to which Plaintiffs are exposed, the harm Defendants may suffer and the nature of the public's interest at issue, the Court determines that the balance of these factors favors granting Plaintiffs' motion for a preliminary injunction.

### IV.  <u>Conclusion</u>

For the foregoing reasons, the Court determines that the Anti-Injunction Act and the Declaratory Injunction Act do not bar Plaintiff RYO Machine and Tobacco Outlet's claims and thus, the Court has subject matter jurisdiction to rule on the Plaintiffs' motion for preliminary injunction.  Furthermore, the Court finds the Anti-Injunction Act and Declaratory Injunction Act bar Tightwad Tobacco's claims and thus, the Court does not have subject matter jurisdiction to rule on Tightwad Tobacco's claims.  Accordingly, Tightwad Tobacco is hereby dismissed from this action.  Thus, Defendants' motion to dismiss (ECF No. 16) is hereby GRANTED in part and DENIED in part.

Further, based upon the foregoing analysis, it is hereby ORDERED that Plaintiffs RYO Machine and Tobacco Outlet's motion for a preliminary injunction (ECF No. 2) shall be GRANTED.

Pending final resolution of this matter, the U.S. Treasury Department, Alcohol and Tobacco Tax and Trade Bureau ("TTB") and their agents, servants, employees, successors, representatives and assigns, and all others in active concert and privity with them who receive

(4:10-CV-2462)

actual notice of this Injunctive Order by personal service or otherwise, are immediately restrained

from enforcing the TTB's September 30, 2010 Ruling No. 2010-4 and all requirements set forth

therein.

The Court will delay scheduling a status call until the time for filing a notice of appeal

with respect to this Order has elapsed.  If an appeal of this Order is filed, the Court will stay all

further proceedings until the Sixth Circuit Court of Appeals resolves the issues.

IT IS SO ORDERED.


  December 14, 2010                                      _s/ David D. Dowd, Jr._____
Date                                                    David D. Dowd, Jr.
                                                        U.S. District Judge